ARLENE WALKER, by Next Friend, v. DR. W. P. WATSON.

Western Section.    March 23, 1928.

W. S. Williams and W. S. Draper, of Dyersburg, for defendant in error.

R. D. Chambers and Grover McCormick, of Memphis, for plaintiff in error.

HEISKELL, J.   This is a suit for malpractice filed by Arlene Walker, a minor, by her next friend and father, M. O. Walker, in the circuit court of Dyer county, Tennessee, against the defendant, Dr. W. P. Watson.

The cause was tried before a jury and a verdict was returned in favor of the plaintiff against the defendant herein, in the sum of five thousand ($5,000) dollars.   The defendant filed his motion for a new trial and argued same before the court and the court sustained that ground of motion for a new trial wherein it was alleged that the verdict of the jury was so excessive as to evidence passion, prejudice and caprice on the part of the jury trying the case, and suggested a remittitur of $3250, leaving the judgment to stand against the defendant in the sum of $1750 and gave the opportunity to the plaintiff of accepting his finding in this regard or having a motion for a new trial sustained.   It was accepted by the plaintiff under protest.   Both plaintiff and defendant excepted to the action of the court and appeals have been perfected by both.   The plaintiff appeals only from the action of the court in suggesting a remittitur.   The defendant appeals generally.

On or about Thursday, July 9, 1925, Arlene Walker, the plaintiff in this cause, then a child about five years of age, was brought to the General Hospital at Dyersburg, Tennessee, and there placed under the care of the defendant herein, Dr. W. P. Watson.   On that date this little girl was on the seat of a mowing machine, evidently owned by her father and next friend in this cause, M. O.

Walker, and while on the machine, the team hitched thereto ran away and as a result her arm was broken at or near the elbow joint. It was a very bad compound fracture. The break of the skin where the bone penetrated through measured an inch or two and was a jagged cut.

Two physicians were called as soon as this little girl was hurt about noon of July 9, 1925. They rendered first aid and advised that she be turned over to the defendant in this case, and she was, therefore, taken to Dyersburg to this hospital, arriving some time during the afternoon of July 9. X-ray pictures were made under the supervision of Dr. Watson, the wound dressed and medicine supplied. On Friday afternoon, July 10, under an anaesthetic, the bone was set and a Thomas splint applied to the arm.

A Thomas splint is made of iron with a ring fitting tightly at the shoulder and two small iron rods running the entire length of the arm, with a cross-bar at the lower end. Two fingers of this little girl were bound over this cross-bar or section and adhesive tape applied in order to get rigidity and so that she could not throw the broken bones out of position.

Dr. Watson was constantly in attendance in and about his hospital and saw this child two or three times during each day. The child was in pain and complained of her arm and complained of her fingers where they were bound with the tape. This was brought to Dr. Watson's attention when he was examining the fingers and looking after the case generally. The splint was allowed to remain on the arm as it was originally placed there and the fingers were allowed to remain in the original position from late Friday afternoon, July 10, until the morning of the following Tuesday, July 14. When the fingers were released, they were in very bad shape, gangrenous, and apparently dead. That is so say, the ends of the two fingers.

The child remained in the hospital for some thirty days under the treatment of Dr. Watson. A few months later, the ends of the two fingers complained of came off, one at the first joint, the other at the second joint.

Alleging malpractice because of lack of skill and because of negligence, this suit is brought against the defendant herein, with the results above set out.

The first and second assignments of error are as follows:

## I.

"The trial court erred in this cause in allowing the plaintiff herein, over the objection and exception of the defendant, to amend the original declaration filed in this cause, which said amendment allowed when the trial of this cause began, is in words and figures as follows:

" 'Comes the plaintiff by her attorney and moves the court to be permitted to amend her declaration filed herein as follows, to-wit:

" 'By adding the following at the end of the first paragraph on the top of page three at line four thereof: Plaintiff avers further that the treatment by the defendant of the plaintiff during the time that he attended her as aforesaid was unnecessarily rough, abusive, cruel, and that he threatened and abused said plaintiff, frequently became angry and enraged with her, shook her, slapped her, and talked roughly and abusive to her, and was so rough, ungentle and cruel in his treatment of her that she became deathly afraid of him, and almost went into hysterics whenever he came into the room where she was.

" 'She alleges that by reason of said careless, negligent, unskilled, cruel and inhuman treatment of her, she suffered great mental and physical pain and anguish, and her fingers being bound down so tightly caused her great and excruciating pain and agony and for a long period of time; and after said bandages were removed and while said fingers were rotting from her hand, she suffered excruciating pain and mental anguish and did for a long period of time: to-wit, about five or six months, and she still suffers much pain and anguish from the tenderness of the stubs of said fingers, and will always do so.' (R. p. 188).

## II.

"The trial court in this cause erred in allowing witnesses, Mrs. Ida Gillam, Plaintiff, Arlene Walker, Mrs. Rose Walker, Mrs. Quincy Walker and Mrs. Majie Walker, over the objection and exception of the defendant herein, to testify that the defendant in this cause was cruel, brutal and gruff in his manner toward the patient, slapped the plaintiff, waived and shook the scissors while in the room in the presence of the plaintiff, scared her and otherwise mistreated her while said patient or plaintiff was under his care and treatment (Rec., p. 71) and testimony of witnesses above enumerated."

It will be seen from the declaration that this is a suit for malpractice. For damages for injury resulting to the plaintiff from the negligence of the defendant. The suit is for actual damages only. There is no claim for punitive damages. The amendment complained of under the first assignment alleges that defendant was rough, abusive and cruel to the five-year-old plaintiff. That he threatened and abused her. That he became angry and enraged with her, shook her, slapped her, and talked roughly and abusive to her and the second clause speaks of the cruel and inhuman treatment of her. The second assignment objects to the evidence introduced in support of these allegations.

We are referred to no authority on either side of the question. In the absence of authority, we think allowing these allegations to be filed and admitting the proof to support them constitute manifest error. There is no connection between the injury sued for and rough, abusive conduct of the defendant. He might be rough, uncouth, ill-mannered and yet be an eminently skillful surgeon, careful and free from negligence. This conduct has no more to do with the particular injury sued for than allegation and proof of the bad moral character of defendant would have, and yet it is not easy to calculate the prejudicial effect this proof might have upon a jury. To be told by the court that the jury could consider as competent the proof that this defendant threatened and abused his little five-year-old patient. That he frequently became angry and enraged with her, shook her, slapped her and was generally cruel and inhuman to her, we can imagine might stir a jury to a frenzy of prejudice. If error at all, it cannot be classed as harmless error, because we can scarcely see how it could fail to have a very prejudicial influence upon the jury against the defendant. We think these assignments must be sustained.

Assignments 3, 4, 5 and 6 raise the question that there is no evidence to sustain the verdict. No evidence to sustain any verdict against the defendant and no evidence upon which the case should have been submitted to the jury. If this contention is sound the case should now be reversed and dismissed on the ground that the trial court should have sustained defendant's motion for a directed verdict. It is insisted for defendant that to hold that there is any evidence in the record to warrant submitting the case to the jury or to justify any verdict, is to apply the doctrine of res ipsa loquitur to the case. We do not think so. This doctrine was not invoked by counsel for plaintiff nor by the court and we do not see that this court is called upon to express any opinion in regard thereto. Aside from the doctrine of res ipsa loquitur, there was evidence introduced which justified the court in overruling the motion of defendant for a directed verdict and allowing the case to go to the jury, and which would support a verdict for plaintiff. It would not be proper for this court to express any opinion as to the amount of the verdict, nor the correctness of the verdict considered from the standpoint of the preponderance of the evidence. All we say is that upon this record as presented, we are compelled to say the case is not without evidence to support a verdict. That is to say, we could not reverse the case for this reason alone. There is a conflict of testimony as to whether the defendant used two braces or only one, whether he admitted the first brace was too short, making it necessary to fold back the two fingers that were injured, and as to whether the defendant examined the fingers during the

time they remained folded back over the cross-bar of the brace, as he should have done in order to ascertain the first signs of injury. Without going further into the testimony, or attempting to consider the weight of the evidence, it cannot be said that there is no evidence to support a verdict in favor of plaintiff, therefore, these assignments are overruled.

As to the other assignments, they go to claims of error in the charge of the court as based upon and in view of, the evidence before the jury. Inasmuch as upon another trial the evidence may not be the same, it is not necessary or proper to pass upon these assignments. There is a class of cases in which the appellate court can see that the same question raised as to a particular instruction to the jury must arise upon another trial. In such cases it is highly important for the court to pass upon such assignments by way of direction on another trial before another jury, but we do not conceive this to be true when the errors assigned depend upon evidence which may not be the same on another trial.

For the reasons given, without further discussion of the questions raised, the case is reversed and remanded for a new trial. Plaintiff will pay the costs of the appeal.

Owen and Senter, JJ., concur.